# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mille Lacs Band of Ojibwe, a federally recognized Indian Tribe; Sara Rice, in her official capacity as the Mille Lacs Band Chief of Police; and Derrick Naumann, in his official capacity as Sergeant of the Mille Lacs Police Department,<br><br>        Plaintiff,<br><br>v.<br><br>County of Mille Lacs, Minnesota; Joseph Walsh, individually and in his official capacity as County Attorney for Mille Lacs County; and Donald J. Lorge, individually and in his official capacity as Sheriff of Mille Lacs County,<br><br>        Defendants. | Case No. 17-cv-05155 (SRN/LIB)<br><br>**ORDER** |

Anna Brady, Beth Ann Baldwin, Marc D. Slonim, and Wyatt Golding, Ziontz Chestnut, 2101 Fourth Avenue, Suite 1230, Seattle, WA 98121; and Arielle Wagner, Charles N. Nauen, and David J. Zoll, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for Plaintiffs.

Brett D. Kelley, Kelley, Wolter & Scott, P.A., 431 South Seventh Street, Suite 2530, Minneapolis, MN 55415; Courtney E. Carter and Randy V. Thompson, Nolan Thompson Leighton & Tataryn PLC, 1011 First Street South, Suite 410, Hopkins, MN 55343; and Scott M. Flaherty and Scott G. Knudson, Taft Stettinius & Hollister LLP, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for Defendant County of Mille Lacs, Minnesota.

Scott M. Flaherty and Scott G. Knudson, Taft Stettinius & Hollister LLP, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for Defendant Joseph Walsh.

Brett D. Kelley, Douglas A. Kelley, Stacy Lynn Bettison, and Steven E. Wolter, Kelley, Wolter & Scott, P.A., 431 South Seventh Street, Suite 2530, Minneapolis, MN

55415; and Scott M. Flaherty and Scott G. Knudson, Taft Stettinius & Hollister LLP, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for Defendant Donald J. Lorge.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss for Lack of Jurisdiction Based on Mootness [Doc. No. 303] filed by Defendants Donald Lorge and Joseph Walsh.[1] Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies the motion.

## I.   BACKGROUND

### A.   Facts Giving Rise to the Lawsuit

Plaintiffs are the Mille Lacs Band of Ojibwe, Mille Lacs Band Chief of Police Sara Rice, and Sergeant Derrick Naumann (collectively, "the Band"). The Band brought suit against the County of Mille Lacs, Mille Lacs County Attorney Joseph Walsh, and Sheriff Donald Lorge (collectively, "the County") seeking declaratory and injunctive relief regarding the Band's law enforcement authority within the Mille Lacs Reservation. (*See generally* Compl. [Doc. No. 1].)

The Court incorporates by reference the factual background set forth in its December 21, 2020 Order [Doc. No. 217]. As the Court recounted in that Order, Article 2 of the 1855 Treaty between the Minnesota Chippewa Tribe and the United States

---

[1]    Also pending before the Court are the parties' Cross-Motions for Partial Summary Judgment [Doc. Nos. 223 & 239].  The Court will address these motions in a separate, forthcoming order.

established the Mille Lacs Indian Reservation, which comprises about 61,000 acres of land. (Dec. 21, 2020 Order at 3.) Plaintiffs contend that the Reservation established by the 1855 Treaty has never been diminished or disestablished. (*Id.*) If the Reservation has been disestablished, which they contend it has not, the Band maintains only a temporary right of occupancy insufficient to constitute a "reservation" in the term's legal sense. Within the Reservation, the United States holds approximately 3,600 acres in trust for the benefit of the Band, the Minnesota Chippewa Tribe, or individual Band members. (*Id.*) The Band owns in fee simple about 6,000 acres of the Reservation, and individual Band members own in fee simple about 100 acres of the Reservation. (*Id.*)

In Defendants' view, however, the Reservation established by the 1855 Treaty was diminished or disestablished by way of subsequent federal treaties, statutes, and agreements. (*Id.*)

In 2008, the Band and the County entered into a cooperative law enforcement agreement ("2008 Agreement") that allowed Band law enforcement officers to exercise concurrent jurisdiction with the Mille Lacs County Sheriff's Department to enforce Minnesota state law, as provided in Minn. Stat. § 626.90. (*Id.*)

In June 2016, however, the County terminated the 2008 Agreement, primarily due to a dispute regarding the Reservation's boundaries, which impacted the scope of the Band's law enforcement authority. (*Id.*; *see also* Baldwin Decl. [Doc. No. 150], Ex. KK (Walsh Dep.) at 318:23–319:3; *id.*, Ex. VV (June 22, 2016 Sheriff Staff Mtg. Minutes) at 8; *id.*, Ex. WW (June 15, 2016 Sheriff Staff Mtg. Minutes) at 2, 5.) In July 2016, County Attorney Walsh asked then-Minnesota Attorney General Lori Swanson for an opinion

regarding the dispute, which she denied for several reasons, and recommended that Walsh advise the County as he deemed appropriate. (*See* Aug. 2021 Walsh Decl. [Doc. No. 306-1] ¶¶ 7–8].)

Shortly thereafter, Walsh issued an Opinion and Protocol (the "2016 Opinion and Protocol") that addressed the Band's state law enforcement authority. (*See* Dec. 21, 2020 Order at 4–5.) Walsh also opined that the Band's inherent law enforcement authority under federal law did not extend to non-trust lands within the 1855 Reservation, and did not include the authority to investigate state-law violations by Indians or non-Indians, even on trust lands. (*Id.*)

Under the 2016 Opinion and Protocol, Band officers who contravened their scope of authority would be subject to criminal and civil penalties for unauthorized use of force, obstruction of justice, and impersonating a peace officer. (*Id.* at 5.) The Sheriff's Office enforced the 2016 Opinion and Protocol by "interfere[ing] with law enforcement measures undertaken by Band officers." (*Id.* at 6, 7–11.) Morale declined among Band officers, several of whom resigned. (*Id.* at 14–15.) Band officers found that due to their diminished authority, they were unable to respond to increasingly visible criminal activity, particularly involving drugs, on the Reservation. (*Id.* at 16.)

In January 2016, the Band and the Bureau of Indian Affairs ("BIA") entered into an agreement, effective January 1, 2017, by which Band officers were deputized and issued Special Law Enforcement Commissions ("SLECs") to enforce federal law within the Band's Indian country. (*Id.* at 21.) Despite the issuance of the SLECs, Walsh maintained that the 2016 Opinion and Protocol remained in force. (*Id.*)

4

Plaintiffs filed this lawsuit in November 2017.  (*Id*. at 22.)  In September 2018, the Band, County, and former Mille Lacs County Sheriff Brent Lindgren entered into an interim law enforcement agreement (the "2018 Agreement").  (*Id*.)  On a temporary basis, the 2018 Agreement grants the Band concurrent jurisdiction with the Sheriff over all persons on trust lands, all Band members within the boundaries of the 1855 Treaty, and any person who commits or attempts to commit a crime within the presence of a Band officer within the boundaries of the 1855 Treaty.  (*Id*.)  Under its own terms, the 2018 Agreement automatically terminates 90 days after the final resolution of this case.  (*Id*.)

The parties proceeded to file early dispositive motions on several issues.  On December 21, 2020, the Court issued a ruling on several of the parties' motions, granting Plaintiffs' Motion for Summary Judgment on Standing, Ripeness, and Mootness; denying Defendants Walsh and Lorge's Motion for Summary Judgment; and denying Defendants' Motion to Strike and for Sanctions.  (*Id*. at 47.)

### B.    Defendants' Interlocutory Appeal

On January 19, 2021, Walsh and Lorge filed an interlocutory appeal [Doc. No. 218], challenging certain aspects of this Court's December 21, 2020 ruling.  Specifically, they argued that the Court lacked jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331, that Plaintiffs lacked a "cause of action" against them, and that they were immune from suit pursuant to various immunity doctrines.  (Baldwin Decl. [Doc. No. 309], Ex. B (W&L Opening 8th Cir. Brief).)  Walsh and Lorge did not challenge this Court's ruling on mootness.

On August 31, 2021, after the parties had filed their memoranda with the Eighth Circuit and were awaiting oral argument, Walsh and Lorge moved to dismiss their appeal on mootness grounds, citing the Supreme Court's June 1, 2021decision in *United States v. Cooley*, 141 S. Ct. 1638 (2021).  (Baldwin Decl. [Doc. No. 309], Ex. C (W&L 8th Cir. Mot. to Dismiss) at 1.)  They also argued that their appeal was moot because it would be speculative to find the challenged conduct would recur.  (*Id*. at 8–9.)  Accordingly, Walsh and Lorge asked the Eighth Circuit to "direct the district court to dismiss [Plaintiffs'] claims against [them]."  (*Id*.)

Alternatively, if the Eighth Circuit declined to dismiss their appeal, Walsh and Lorge asked the court to refer the question of whether they were state actors to the Minnesota Supreme Court.  (*Id*. at 10–11.)

On September 10, 2021, the Eighth Circuit ruled on the Motion to Dismiss, stating, "Appellants' motion to dismiss on terms fixed by the court is granted.  Each side will bear its own costs on appeal.  The Court's mandate shall issue forthwith."  (8th Cir. J. [Doc. No. 292]) (citing  Fed. R. App. P. 42(b); Fed. R. App. P. 39(a)(4)).  The Eighth Circuit issued its mandate that same day, returning jurisdiction to this Court.  (8th Cir. Mandate [Doc. No. 292].)

Later on September 10, Plaintiffs filed their response to Walsh and Lorge's Motion to Dismiss, even though the Eighth Circuit had just issued its judgment and mandate. (Baldwin Decl. [Doc. No. 309], Ex. D (Pls.' Resp. to 8th Cir. Mot. to Dismiss).)  Plaintiffs explained that nevertheless, they were making a timely response "in the event there are any further proceedings before [the Eighth Circuit] under [Fed. R. App. P.] 40 or Eighth Circuit

Rule 27A(d)," i.e., proceedings for rehearing or reconsideration of the Eighth Circuit's disposition of the appeal.  (*Id*. at 2.)  Plaintiffs expressed the view that while the Eighth Circuit had dismissed the appeal, the court had not ruled on the merits of Walsh and Lorge's motion.  (*Id*. at 1–2.)  Thus, they argued, the matter was not moot, and the case was once again subject to the district court's jurisdiction.  (*Id*.)

On September 17, 2021, Walsh and Lorge filed a "reply" memorandum in the Eighth Circuit in support of their Motion to Dismiss, stating that if the appellate court had concluded that Plaintiffs' case was moot, "it should say so[.]"  (Baldwin Decl. [Doc. No. 309], Ex. E (W&L Sept. 17, 2021 8th Cir. Reply) at 2.)  Walsh and Lorge requested that the Eighth Circuit either certify the question of whether *Cooley* mooted their appeal to the Minnesota Supreme Court, or address the merits of their appeal.  (*Id*. at 4.)  Thus, they "suggest[ed]" that the Eighth Circuit recall the mandate and explain whether *Cooley* mooted the case against them.  (*Id.*)

The Eighth Circuit issued no ruling in response to Walsh and Lorge's memorandum, prompting Walsh and Lorge to file a Motion to Recall the Mandate on October 15, 2021, seeking to confirm that "*Cooley* moots the case against them."  (Baldwin Decl. [Doc. No. 309], Ex. F (W&L 8th Cir. Mot. to Recall Mandate).)  On October 19, 2021, Plaintiffs filed their opposition to the motion, noting the failure of Walsh and Lorge to timely file a motion for rehearing or reconsideration.  (Baldwin Decl. [Doc. No. 309], Ex. G (Pls.' 8th Cir. Opp'n to Mot. to Recall Mandate).)  The following day, in a one-sentence order, the Eighth Circuit summarily denied the Motion to Recall the Mandate. (Baldwin Decl. [Doc. No. 309], Ex. H (Oct. 20, 2021 8th Cir. Order).)

C.     **November 15, 2021 Status Conference and Supplemental Briefing**

On November 15, 2021, the Court held a status conference in this case, and directed the parties to submit supplemental briefing to address the procedural impact of the Eighth Circuit's dismissal of Walsh and Lorge's interlocutory appeal.  (Baldwin Decl. [Doc. No. 309], Ex. I (Nov. 15, 2021 Tr.) at 17–18.)  In addition, the Court directed the parties to address whether the case was moot, in the event this Court found that the Eighth Circuit had not ruled on the question of mootness and had given no direction to this Court to dismiss the case.  (*Id.*)

Walsh and Lorge submitted their supplemental memorandum, along with the instant motion "for an order dismissing them from the case pursuant to" their supplemental memorandum.  (W&L Mot. to Dismiss at 1.)  Although they maintain that the Eighth Circuit granted their Motion to Dismiss on mootness grounds, they nevertheless argue that this Court should address their mootness arguments and dismiss them from the case. (W&L Supp'l Mem. [Doc. No. 305] at 7–10.)  In support of their position, they also submit the August 2021 Declarations of Joseph J. Walsh [Doc. No. 306-1] and Donald Lorge [Doc. No. 306-2], which were filed with Defendants' initial Eighth Circuit interlocutory appeal. (*See* Knudson Decl. [Doc. No. 306] ¶¶ 2–3.)

In response, Plaintiffs argue that the Eighth Circuit did not direct this Court to dismiss the case or otherwise rule on Walsh and Lorge's mootness arguments.  (Pls.' Supp'l Opp'n [Doc. No. 308] at 17–20.)  They contend that this Court correctly ruled in December 2020 that the parties' 2018 law enforcement agreement did not moot Plaintiffs' claims, and Walsh and Lorge present no valid reason for the Court to reconsider the issue.  (*Id*. at 20–

8

25.)  In addition, Plaintiffs maintain that neither *Cooley* nor Walsh and Lorge's August 2021 Declarations demonstrate that this case is moot.  (*Id*. at 25–33.)  Finally, they urge the Court to reject Walsh and Lorge's contention that the possibility of recurring conduct is merely speculative.  (*Id*. at 33–35.)

## II.   DISCUSSION

### A.   Effect of Eighth Circuit's Dismissal

The Eighth Circuit's Judgment, quoted earlier, dismissed Walsh and Lorge's interlocutory appeal under Federal Rule of Appellate Procedure 42(b).  (8th Cir. J. at 1.) Rule 42(b) provides for the voluntary dismissal of an appeal, stating, as relevant here, that "[a]n appeal may be dismissed on the appellant's motion on terms . . . fixed by the court." Fed. R. App. P. 42(b).  The "terms" fixed by the Eighth Circuit required each side to bear its own costs related to the appeal.  (8th Cir. J. at 1.)

Walsh and Lorge concede that the Eighth Circuit's Judgment did not mention mootness, nor did it direct dismissal on that basis.  (W&L Supp'l Mem. at 7.)  They further state, "Counsel for Walsh and Lorge have been unable to find precedent where justiciability was challenged and a case dismissed without explanation."  (*Id*.)  Instead, they postulate that because the Eighth Circuit granted their motion to dismiss the appeal, "the Eighth Circuit must have affirmed the merits of their motion, similarly to the way an appellate court may issue without opinion a summary affirmance, or judgment order, affirming a lower court ruling."  (*Id*.)  They further note that mootness was their only basis for seeking dismissal, and the Eighth Circuit "did not specify another substantive basis" for dismissal.

9

(*Id.* at 8.)  And they assert that "when an appellate court wants to avoid ruling on mootness, the court will so state."  (*Id.* at 8–9) (citing *Terkel v. CDC*, 15 F.4th 683 (5th Cir. 2021)).

However, contrary to Walsh and Lorge's arguments, the Eighth Circuit *did* provide an explanation for its dismissal by treating the motion as one for voluntary dismissal under Rule 42(b), and granting it on that basis.  Consequently, the court had no reason to address mootness.  If Walsh and Lorge disagreed with the Eighth Circuit's dismissal order, finding that it misconstrued their Motion to Dismiss the Appeal, they could have timely sought rehearing or reconsideration with the Eighth Circuit.   They did not.

In fact, Walsh and Lorge realized that the Eighth Circuit had not ruled on mootness, and twice asked the court to recall its mandate and substantively rule on the issue or to certify a question to the Minnesota Supreme Court.  (Baldwin Decl. [Doc. No. 309], Ex. E (W&L 8th Cir. Reply) at 3; *id.*, Ex. F (W&L 8th Cir. Mot. to Recall Mandate) at 5.)  Since Walsh and Lorge made their first request in a reply memorandum, the Eighth Circuit issued no response, but the court summarily denied their second request, made in their Motion to Recall the Mandate.  (Baldwin Decl. [Doc. No. 309], Ex. H (8th Cir. Oct. 20, 2021 Order).)

Ultimately, Walsh and Lorge appear to agree that "in the absence of any clear direction from the appellate court, . . . the prudent course is for this Court to address in the first instance the changed legal and factual landscape they believe moots Plaintiffs' case against them."  (W&L's Supp'l Mem. at 9.)  Accordingly, the Court proceeds to discuss Walsh and Lorge's current mootness arguments.

**B.   Mootness**

The Constitution limits federal courts' jurisdiction to actual "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  If "'the issues presented are no longer live,' . . . a case or controversy under Article III no longer exists because the litigation has become moot."  *Brazil v. Ark. Dep't of Human Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  In general, a case becomes moot "when changed circumstances already provide the requested relief and eliminate the need for court action."  *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (citing *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004)).  If an action becomes moot, the court must dismiss it for lack of jurisdiction.  *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005).

In some instances, a defendant may argue that a case is automatically moot because the defendant has voluntarily ceased to engage in the challenged conduct.  Such "voluntary cessation" does not necessarily moot a case, however, since the defendant is "free to return to his old ways."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted).  A case can become moot by the defendant's voluntary cessation only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (quoting *Friends of the Earth,* 528 U.S. at 189 (2000)).

The party asserting mootness under the voluntary cessation theory bears a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again."  *Friends of the Earth*, 528 U.S. at 189 (internal quotations and citation

omitted).  Governmental entities and officials "[are] given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Prowse v. Payne*, 984 F.3d 700 (8th Cir. 2021) (citation omitted)).  But where circumstances suggest that by ceasing to engage in the challenged conduct, the defendant is simply "attempting to manipulate [the court's] jurisdiction to insulate a favorable decision from review," *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000), courts are unlikely to find a case moot.  *See Already*, 568 U.S. at 91.

Walsh and Lorge assert three primary grounds for dismissal based on mootness. First, they argue that the 2018 Agreement, and Walsh's revocation of the 2016 Opinion and Protocol, moot Plaintiffs' claims.  (W&L Supp'l Mem. at 10.)  Second, they contend that *Cooley* represents a change in the law that precludes Walsh from issuing an opinion and protocol similar to the 2016 Opinion and Protocol.  (*Id*.)  Third, they assert that any holding that this case is not moot "pushes this Court into rank speculation over what either Walsh or Lorge, or their successors, would do if a cooperative agreement was no longer in place."  (*Id*.)  For all of these reasons, they argue that this case is moot and must be dismissed.

### 1. Whether the 2018 Agreement and the Revocation of the 2016 Opinion and Protocol Moot the Band's Claims Against Walsh and Lorge

In the December 2020 Order, the Court rejected Walsh and Lorge's related argument that the 2018 Agreement moots Plaintiffs' claims.  (Dec. 21, 2020 Order at 2, 35–36.)  Referencing mootness by virtue of a party's voluntary cessation of the challenged conduct, the Court explained, "If this case is dismissed, on mootness grounds, the 2018

Agreement will, by its very terms, terminate, and it is highly probable that the parties will continue to dispute the extent of the boundaries of the Reservation and the extent of the Band's sovereign law enforcement authority." (*Id.* at 35–36.) Indeed, disagreement about the Reservation boundaries was at the heart of the County's decision to terminate the 2008 Agreement. (*See* Baldwin Decl. [Doc. No. 150], Ex. KK (Walsh Dep.) at 318:23–319:3 (stating, "The primary motivating factor of the revocation . . . was the M-opinion, and what I think the board viewed as the Band using their law enforcement authority to improve their position vis-à-vis the boundary."); *id.*, Ex. VV (June 22, 2016 Sheriff Staff Mtg. Minutes) at 8 ("This is a boundary dispute between the County and the Band."); *id.*, Ex. WW (June 15, 2016 Sheriff Staff Mtg. Minutes) at 2, 5 (noting "Boundary issues" and expressing high likelihood of revocation and that "all will come united because this is a boundary issue.").

### a. Reconsideration

Procedurally, Walsh and Lorge did not appeal the portion of the Court's December 2020 Order addressing mootness, nor have they moved for reconsideration or identified any "compelling circumstances" warranting reconsideration. *See* Fed. R. Civ. P. 60 (stating that a motion for "reconsideration" directed at an order is properly considered under Rule 60); D. Minn. L.R. 7.1(j) (authorizing motions for reconsideration only upon obtaining leave of court and upon a showing of compelling circumstances). To the extent the argument is relevant to reconsideration, Walsh and Lorge contend that this case "is not controlled by the voluntary cessation exception to the mootness doctrine," because Walsh did not revoke his 2016 Opinion and Protocol in order to "manipulat[e] his [] conduct or to invent a mootness argument." (W&L Supp'l Mem. at 11.)

The Court finds that this argument does not constitute the type of compelling or "exceptional circumstance[]" necessary to support reconsideration. *See Rindahl v. U.S. Attorney's Office for Minn.*, No. 18-cv-3237 (JRT/ECW), 2019 WL 404043, at *2 (D. Minn. Jan. 31, 2019) (noting that permission to seek reconsideration is granted only upon a showing of compelling circumstances or to "correct manifest errors of law or fact or to present newly discovered evidence."), *report & recommendation adopted*, 2019 WL 1993827 (D. Minn. May 6, 2019).  Importantly, a party cannot use a motion to reconsider to repeat previous arguments, introduce new evidence or arguments that could have been presented, or "tender new legal theories for the first time." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citations omitted).  As Plaintiffs observe, Walsh and Lorge previously argued in 2020 that this is not a voluntary cessation case because "[t]he parties voluntarily negotiated and entered into the 2018 []Agreement," and Plaintiff had not shown that Defendants entered into the agreement for the improper purpose of mooting the lawsuit.  (W&L Opp'n to Summ. J. on Standing, Ripeness, and Mootness [Doc. No. 176] at 54–55.)

This issue was previously raised and addressed, and the Court finds that Walsh and Lorge fail to present compelling or exceptional circumstances to warrant reconsideration. Accordingly, from a procedural standpoint, Walsh and Lorge's current mootness argument based on the 2018 Agreement and the revocation of the 2016 Opinion and Protocol is not properly before the Court.

14

**b.      Effect of the 2018 Agreement and the Revocation of the 2016 Opinion and Protocol on the Merits**

Even if this portion of their motion were procedurally proper, the Court remains unpersuaded that the 2018 Agreement and the revocation of the 2016 Opinion and Protocol moots the case.  Again, Walsh and Lorge contend that a finding of voluntary cessation is inapplicable, as Walsh attests he revoked the 2016 Opinion and Protocol not because he sought to engage in manipulative conduct in response to this litigation, but because the County and the Band had freely negotiated the 2018 Agreement.[2]  (W&L Supp'l Mem. at 11.)

In support of their position, Walsh and Lorge point to *Let Them Play MN v. Walz*, No. 21-cv-79 (ECT/DTS), __ F. Supp. 3d__, 2021 WL 3741486, at *6 (D. Minn., Aug. 24, 2021), in which the court found a lawsuit challenging certain COVID-related restrictions on youth sports was moot.  Indeed, the court found the circumstances surrounding the Governor's lifting of restrictions did not demonstrate "the type of manipulative behavior the voluntary-cessation exception is meant to address," but it further found the matter was moot because the challenged conduct was unlikely to recur.  *Id.*

Taking a step back from the question of whether the voluntary cessation exception applies, the Court must first address, fundamentally, the underlying question of mootness,

---

[2]      The Band contends that Walsh fails to support his statements regarding revocation with any supporting evidence, such as a signed document purporting to show the revocation of the 2016 Opinion and Protocol.  (Baldwin Decl. [Doc. No. 309] ¶¶ 3–4.)  For purposes of this motion, the Court will assume that Walsh revoked the 2016 Opinion and Protocol.

namely, whether "changed circumstances already provide the requested relief and eliminate the need for court action," *Hillesheim*, 903 F.3d at 791, or "the issues presented are no longer live." *Brazil*, 892 F.3d at 959.

Walsh and Lorge rely on their August 2021 Declarations in support of their position that circumstances have changed, rendering this case moot. In his declaration, Walsh states as follows:

> 14. At the time I drafted my opinion and protocol in 2016, the United States Supreme Court had not determined the scope of retained inherent tribal jurisdiction to investigate potential state and federal law criminal violations. In the Opinion, I set out several conclusions relevant to inherent tribal criminal authority. One of these conclusions was that tribes do not have criminal jurisdiction over non-Indians, with a narrow exception under the Violence Against Women Act.
>
> 15. I have read the recent United States Supreme Court decision in *United States v. Cooley*, 141 S. Ct. 1638 (June 1, 2021). In *Cooley*, the Court held that tribes, and by extension tribal police officers, *within their reservation* had inherent authority to stop and investigate non-Indians for possible state and federal law violations. The *Cooley* decision alleviated my major concern in issuing my Opinion in 2016: having evidence that was admissible in court. Consequently, I could not and would not reissue my 2016 Opinion and Protocol should the current cooperative agreement entered into in 2018 terminate.

(Aug. 2021 Walsh Decl. ¶¶ 15–16) (emphasis added). In Sheriff Lorge's declaration, he states that if the 2018 Agreement is terminated, he "would follow the advice of the County Attorney and instruct my deputies and staff accordingly." (Aug. 2021 Lorge Decl. ¶ 6.)

As to whether these representations constitute "changed conduct" that already provides the requested relief, or render issues no longer "live," the Court turns to the Complaint. Among the types of relief the Band requests is a declaration stating that:

CASE 0:17-cv-05155-SRN-LIB   Doc. 312   Filed 03/03/22   Page 17 of 27

A.  As a matter of federal law, the Band possesses inherent sovereign authority to establish a police department and to authorize Band police officers to investigate violations of federal, state and tribal law *within the Mille Lacs Indian Reservation as established in Article 2 of the Treaty with the Chippewa, 10 Stat. 1165 (Feb. 22, 1855)*, and in exercising such authority, to apprehend suspects (including Band and non-Band members) and turn them over to jurisdictions with prosecutorial authority; and

B. Pursuant to 18 U.S.C. § 1162(d), 25 U.S.C. §§ 2801 and 2804, the Deputation Agreement between the Band and the Bureau of Indian Affairs, and the SLECs issued to Band police officers by the Bureau of Indian Affairs, Band police officers have federal authority to investigate violations of federal law *within the Mille Lacs Indian Reservation as established in Article 2 of the Treaty with the Chippewa, 10 Stat. 1165 (Feb. 22, 1855)*, and, in exercising such authority, to arrest suspects (including Band and non-Band members) for violations of federal law.

(Compl. at 7) (emphasis added).

Even giving full credit to Walsh's statement that upon the termination of the 2018 Agreement, and consistent with *Cooley*, he would not "reissue" his 2016 Opinion and Protocol, (Aug. 2021 Walsh Decl. ¶ 16), his representations do not provide the Band's requested relief, nor do they resolve an issue essential to the Band's claims. The Band's claims concerning the scope of its law enforcement authority "*within the Reservation*," quoted above, require resolution of whether the Milles Lacs Reservation remains as it was under Article 2 of the Treaty with the Chippewa, 10 Stat. 1165 (Feb. 22, 1855) ("the Treaty of 1855"), as the Band contends, or whether subsequent treaties and Acts of Congress have disestablished or diminished the Reservation, as Walsh and Lorge contend. (Compl. at 7) (emphasis added).

Walsh and Lorge's Declarations say nothing about the Reservation's boundaries, although they recognize that the issue is crucial to this dispute. For example, elsewhere in

his Declaration, Walsh implicitly acknowledges that the scope of the Band's law enforcement authority is affected by the issue of the Reservation's geographic boundaries. (*See* Aug. 2021 Walsh Decl. ¶¶ 10 (noting prior letters from Minnesota officials stating that the "the Mille Lacs Band's Indian Country is limited to approximately 4,000 acres of land held in trust by the federal government for the [] Band."), 11 (explaining that in drafting the 2016 Opinion and Protocol, Walsh sought to "determine what state law enforcement authority the Mille Lacs tribal police department would have in Mille Lacs County, and in particular, the three northern townships of the County that formed the original reservation in 1855."); *see also* W& L Supp'l Reply [Doc. No. 310] at 9 (asserting that based on *Cooley*, "there is no longer an obvious dispute about Plaintiffs' inherent authority, and there is only a dispute about the geographic scope of that authority.").) Nothing in the Walsh or Lorge Declarations puts to rest the disputed issue regarding the Reservation's boundaries. To the contrary, Defendants maintain that the Reservation was disestablished, and acknowledge that the issue remains unresolved.  (*See* W&L Supp'l Reply at 10) (stating, "The only issue  here is whether the former reservation has been disestablished.").

In addition, as the Court discusses in greater detail below, *Cooley* concerns tribal law enforcement authority over non-Indians on public rights-of-way running through a reservation.  141 S. Ct. at 1641–42. *Cooley* does not address tribal law enforcement authority when the boundaries of the reservation are in dispute.

Walsh and Lorge rely on *Prowse v. Payne*, 984 F.3d 700 (8th Cir. 2021), a recent case in which an inmate challenged prison authorities' refusal to provide hormone therapy

to the inmate, in reliance on a blanket policy of denying such treatment.  While the inmate's appeal was pending, the prison began providing treatment to the inmate.  *Id*. at 701–02. The Eighth Circuit noted that while a defendant ordinarily faces a heavy burden to establish mootness, "the standard is slightly less onerous when it is the government that has voluntarily ceased the challenged conduct." *Id*. at 703 (citations omitted).  The court found the inmate's challenge to the general policy was rendered moot because she was receiving treatment.  *Id*.  As to the inmate's challenge based on her own access to treatment, the Eighth Circuit found the question of mootness to be "a closer call." *Id*.  But because prison officials averred that the inmate would receive hormone therapy so long as her treating physicians recommended it, the court held that the challenged conduct could not be reasonably expected to recur.  *Id*.

Walsh and Lorge argue that there is no meaningful distinction between Walsh's representations here and the prison administrators' representations in *Prowse*.  (W&L Supp'l Mem. at 13–14.)   But the facts here are unlike the provision of hormone therapy to the inmate in *Prowse*, which constituted changed conduct that granted the requested relief and left no "live" dispute.  Walsh's representations that he will not reissue the 2016 Opinion and Protocol still leave open the scope of the Band's law enforcement authority upon the termination of the 2018 Agreement because of the disputed boundary issue.  There is no question that the boundary issue, as it affects the scope of the Band's law enforcement authority, remains "live."

Accordingly, the Court finds that neither the 2018 Agreement nor Walsh's representations regarding the revocation of the 2016 Opinion and Protocol moot this case.

### 2.    Whether *Cooley* Moots the Band's Claims Against Walsh and Lorge

As noted earlier, Walsh and Lorge also argue that this matter is moot because *Cooley* represents a change in the law that precludes Walsh from issuing an opinion and protocol similar to the 2016 Opinion and Protocol.  (W&L Supp'l Mem. at 14–16.)

In *Cooley*, the Supreme Court held that tribal police officers have the authority to temporarily detain and search a non-Indian on a public right-of-way that runs through an Indian reservation for potential violations of state and federal law.  141 S. Ct. at 1641.  The Court observed that it had previously recognized that "where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."  *Id*. at 1644 (citing *Duro v. Reina*, 495 U.S. 676, 687–88 (1990)).  The Supreme Court found the tribal authority in *Cooley*, i.e., the authority to search a non-Indian prior to transport, was ancillary to the authority it had previously recognized.  *Id*.  (citing *Ortiz-Barraza v. United States*, 512 F.2d 1176, 1180–81 (9th Cir. 1975)).  In fact, the Court observed that "several state courts and other federal courts have held that tribal officers possess the authority at issue here."  *Id*. (citing, *inter alia*, *United States v. Terry*, 400 F.3d 575, 579–80 (8th Cir. 2005)).  Observing that while in *Duro*, "[the Court] traced the relevant tribal authority to a tribe's right to exclude non-Indians from reservation land," the Supreme Court held in *Cooley* that "tribes 'have inherent sovereignty independent of th[e] authority arising from their power to exclude.'" *Id*. (citation omitted).

Importantly, *Cooley* does not address the issue of reservation boundaries, which Walsh and Lorge acknowledge. Walsh recognizes that *Cooley* applies to "tribes, and by extension tribal police officers, *within their reservation*[.]" (Aug. 2021 Walsh Decl. ¶ 16) (emphasis added). And counsel for Walsh and Lorge acknowledged at the November 15, 2021 status conference that "the scope of tribal law enforcement authority in terms of the geographic scope would depend upon the boundary issue. Because if the boundaries were disestablished, then there's Indian Country within Mille Lacs County, but there is not the reservation boundary as such." (Baldwin Decl. [Doc. No. 309], Ex. I (Nov. 15, 2021 Tr.) at 11.) Again, nowhere in Walsh and Lorge's Declarations do they disavow their view that the Reservation has been disestablished. Instead, their position directly contravenes the Band's view that the Reservation remains as it was under the Treaty of 1855.

In addition, the Eighth Circuit's 2005 decision in *Terry*, 400 F.3d at 575, is one of the cases the Supreme Court cited in *Cooley* for the proposition that several state courts and other federal courts had *already* held that tribal officers possessed the authority at issue in *Cooley*. *Cooley*, 141 S. Ct. at 1644. In *Terry*, the Eighth Circuit entertained a criminal appeal in which Terry, a non-Indian, argued that tribal law enforcement officers had unreasonably seized him on the Pine Ridge Reservation, and lacked the authority to do so. 400 F.3d at 579. The Eighth Circuit disagreed, ruling that tribal officers have inherent authority to investigate violations of state and federal law, including violations by non-Indians, at least on reservation land from which the tribe has the power to exclude violators. 400 F.3d at 579–80 (stating, "[T]ribal police officers do not lack authority to detain non-Indians whose conduct disturbs the public order on their reservation," and explaining that

"[b]ecause the power of tribal authorities to exclude non-Indian law violators from the reservation would be meaningless if tribal police were not empowered to investigate such violations, tribal police must have such power.").

Walsh testified in his deposition that he did not consider Eighth Circuit decisions to be controlling authority, and when drafting the 2016 Opinion and Protocol, he took a "conservative viewpoint [that Band law enforcement officers] had less authority than more, which would lead to less appeals and less contested issues[.]"  (Baldwin Decl. [Doc. No. 174], Ex. B (Walsh Dep.) at 301:15–17) ("Q:  So you wouldn't consider an 8th Circuit decision controlling?  A:  It's not."); *id.* at 293:24–294:3.)  Although Walsh argues that *Cooley* moots the case,[3] he also acknowledges that the case leaves "the scope of any [tribal law enforcement] authority beyond the facts of the case" up to "the lower courts to work out."  (W&L Supp'l Mem. at 5) (noting that *Cooley* involved the possession of two semi-automatic rifles).  Indeed, that is what this lawsuit seeks to "work out."  Defendants continue to maintain that the Reservation has been disestablished—a position directly at odds with Plaintiffs' requested relief, on an issue highly relevant to the Band's scope of law enforcement authority.

---

[3]      The Minnesota Supreme Court has cited and applied *Terry*, finding a tribal officer had lawfully "detained and investigated" a non-member suspected of violating Minnesota law "pursuant to the tribal authority to detain and remove recognized by the Supreme Court and other federal courts."  *State v. Thompson*, 937 N.W.2d 418, 421 (Minn. 2020). Although the Minnesota Supreme Court issued *Thompson* in January 2020, and the U.S. Supreme Court did not issue *Cooley* until June 2021, Walsh and Lorge do not argue that *Thompson* moots this case.

In support of their position, Walsh and Lorge rely on *Young America's Foundation v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021), in which a student group challenged the University of Minnesota's policy for assigning venues for speaking events, arguing that the policy denied the group a preferred location for its speaker. (W&L Supp'l Reply at 5–6.) By the time of the plaintiffs' appeal, however, the University had replaced its policy for hosting major events to include "more defined terms and standards." *Young Am.'s Found.*, 14 F.4th at 887. The Eighth Circuit analyzed the policy change as conduct "capable of repetition, yet evading review," as opposed to voluntary cessation under *Friends of the Earth*. *Id.* at 886 (explaining that when a law or policy "'has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot unless the problems are 'capable of repetition yet evad[ing] review.'") (citing *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012)) (alteration in original). A policy is not "capable of repetition yet evading review" merely because the governing body may reenact the policy after dismissal of the lawsuit. *Id.* (citing *Teague v. Cooper*, 720 F.3d 973, 977 (8th Cir. 2013)). Such situations are rare and generally arise "where it is virtually certain" that the repealed law or policy will be reenacted. *Id.* (citing *Teague*, 720 F.3d at 977).

The Eighth Circuit found that the University's policy change was not one of those rare situations, noting that the policy was not merely "repackaged," but was substantively amended to address the plaintiff's concerns, and it contained more defined, clear terms. *Id.* at 886–87. The court also found that the plaintiff had failed to show that it was "virtually certain" that the University would reenact its prior policy. *Id.* at 887. To the contrary,

because the new policy was more detailed and broadly applicable to the entire Twin Cities campus, the court found it unlikely that the University would reenact its less defined and more limited prior policy. *Id.* Accordingly, the Eighth Circuit found that the policy was not "capable of repetition yet evading review," rendering plaintiff's facial challenges moot. *Id*.

Walsh and Lorge contend that *Cooley*, and Walsh's representations that based on *Cooley*, he could not and would not reissue his 2016 Opinion and Protocol, represent a change similar to the University's policy change in *Young America's Foundation*. The Court finds this authority distinguishable. Walsh's pledge to not reissue his 2016 Opinion and Protocol, consistent with the limited facts of *Cooley*, is unlike the University of Minnesota's wholesale repeal of its challenged policy in *Young America's Foundation*, and its enactment of a newer, more detailed and broadly applicable policy that entirely disposed of the plaintiff's facial challenge to the repealed policy. 14 F.4th at 886–87. Again, Walsh's representations do not reach the boundary issue, which remains both "live" and essential to the Band's claims regarding its law enforcement authority.

Similarly, his representations are not comparable to the changed circumstances in the other cases on which Defendants rely, where the changes in question resulted in plaintiffs obtaining their requested relief, leaving no actual dispute. *See Hartnett v. Penn State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020) (finding that Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), which involved the same issue of union-imposed agency fees on non-union members, and the defendant's compliance with *Janus*, resolved the same issue in *Hartnett* and mooted the case); *DeFunis v. Odegaard*,

416 U.S. 312, 314, 316–320 (1974) (concluding that law school applicant's equal protection challenge to his denial of admission was moot where the lower court had granted injunctive relief, requiring his admission, and by the time the case reached the Supreme Court, student was enrolled in his final term of law school, and would receive his degree, regardless of any decision on the merits); *McCarthy*, 359 F.3d at 1036 (holding that students' challenge to Arkansas statute mandating a hepatitis vaccine unless the students could claim a recognized religious exemption was rendered moot when, while on appeal, the state broadened the scope of the statute to allow exemptions for general religious or philosophical beliefs.); *United States v. Mercy Health Services*, 107 F.3d 632, 636–37 (8th Cir. 1997) (finding that health care entities' decision to not merge thoroughly disposed of the Government's antitrust lawsuit against them, even if they expressed the desire to perhaps merge at some future time).

In all of these cases, changed circumstances, which also resulted in the plaintiffs receiving their requested relief, left no live controversy.   Walsh's representations here, consistent with *Cooley*, that he would not reissue his 2016 Opinion and Protocol upon the expiration of the 2018 Agreement, do not resolve the boundary issue that is a key part of the Band's law enforcement claims.  Defendants continue to maintain that the Reservation has been disestablished and acknowledge that this issue remains in dispute.  Accordingly, the Court finds that *Cooley* and Walsh's representations based on that case, do not moot this case.

### 3.      Whether a Finding that the Case is Not Moot is Speculative

Finally, Walsh and Lorge assert that a finding that this case is not moot "pushes this Court into rank speculation over what either Walsh or Lorge, or their successors, would do if a cooperative agreement was no longer in place." (W&L Supp'l Mem. at 10.)  Indeed, "[a] speculative possibility is not a basis for retaining jurisdiction over a moot case." *McCarthy*, 359 F.3d at 1036.

Walsh and Lorge previously raised this argument in opposition to the Band's Motion for Summary Judgment on Standing, Ripeness, and Mootness. (*See* W&L Opp'n to Summ. J. on Standing, Ripeness, and Mootness at 55.)  In particular, they argued that "Plaintiffs speculate that the County Attorney will re-implement his Opinion and Protocol *if* the parties cannot reach a new agreement during the 90-day grace period" following the expiration of the 2018 Agreement. (*Id.*) (emphasis in original).  They maintained that such speculation rested on additional, equally speculative, assumptions:  that the County Attorney would issue a new Opinion and Protocol contrary to law, that legal precedent or statutes would not alter the legal landscape, and that some future County Attorney would implement the same legal opinion. (*Id.*)

The Court rejected this argument, finding that if the case were dismissed for mootness, prompting the expiration the 2018 Agreement, followed by a 90-day grace period, it was highly probable that the parties would continue to dispute the extent of the boundaries on the Reservation and the extent of the Band's sovereign law enforcement authority. (Dec. 21, 2020 Order at 35–36.)  Walsh and Lorge fail to provide any basis for the Court to reconsider its prior ruling, and it is not properly before the Court.

Even if it were, the Court stands by its prior ruling.  Given Defendants' unwavering belief that the Reservation has been disestablished, and the impact of the boundary issue on the Band's law enforcement authority, it is not speculative to find that the challenged conduct is likely to recur.  For all of the reasons set forth above, neither *Cooley* nor Walsh and Lorge's August 2021 Declarations resolve the issue of the Reservation's boundaries— an issue essential to the Band's claims regarding the scope of its law enforcement authority. Accordingly, the Court denies Walsh and Lorge's motion on this basis.

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

> 1.    The Motion to Dismiss for Lack of Jurisdiction Based on Mootness [Doc. No. 303] filed by Defendants Donald Lorge and Joseph Walsh is **DENIED**.

Dated: March 3, 2022                                    s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge